IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN PATRICK NEWTON<br>(BOP Register No. 56067-112), | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:17-cv-1419-G-BN |
| UNITED STATES OF AMERICA, ET<br>AL., | § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This *pro se* action filed by Plaintiff John Patrick Newton, an inmate at FCI

Seagoville, has been referred to the undersigned United States magistrate judge for

pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from

Senior United States District Judge A. Joe Fish.

Defendants United States of America, the Department of Justice ("DOJ"), the

Bureau of Prisons ("BOP"), D.J. Harmon, and Dr. Capps, through the United States

Attorney for this district, moved to dismiss Newton's complaint under Federal Rules

of Civil Procedure 12(b)(1) and 12(b)(6). *See* Dkt. Nos. 15, 16, & 17. Newton filed a

response to the motion. *See* Dkt. No. 20. And Defendants filed a reply brief. *See* Dkt.

No. 21.

The Court then converted, under Federal Rule of Civil Procedure 12(d), potions

of Defendants' motion to dismiss – those portions urging that this action should be

dismissed because, as to his claims against Warden Harmon and Dr. Capps, Newton

failed to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"), *see* 42 U.S.C. § 1997e(a), and that Newton's claims against the United States and its agencies (the DOJ and the BOP) under the Federal Tort Claims Act ("FTCA") should be dismissed as barred by the FTCA's statute of limitations – to a motion for summary judgment under Federal Rule of Civil Procedure 56. *See* Dkt. No. 22.

Newton filed a response. *See* Dkt. Nos. 23, 24, & 25. And Defendants filed a reply. *See* Dkt. No. 26.

The undersigned enters these findings of fact, conclusions of law, and recommendation that, for the reasons and to the extent explained below, after converting Defendants' motion to dismiss to one for summary judgment, the motion should be granted, and the Court should dismiss the claims against Defendants Harmon and Capps without prejudice, but dismiss the claims against the United States (and its agencies) with prejudice.

## Applicable Background

Newton is incarcerated in the BOP after being convicted in this Court of conspiracy to distribute a controlled substance, maintaining a drug-involved premises, possession of a controlled substance with intent to distribute, and a money-laundering conspiracy, which resulted in his being sentenced to 292 months of imprisonment. *See United States v. Newton*, No. 3:09-cr-103-D (01) (N.D. Tex.), *aff'd*, 463 F. App'x 462 (5th Cir. 2012) (per curiam); *see also Newton v. United States*, Nos. 3:13-cv-2488-D & 3:09-cr-103-D (01), 2014 WL 1294873 (N.D. Tex. Mar. 31, 2014) (denying relief under 28 U.S.C. § 2255), *C.O.A. denied*, No. 14-10603 (5th Cir. Mar. 4, 2015), *cert. denied*, 137

S. Ct. 1833 (2017).

Through this action against the warden of FCI Seagoville and a doctor at that facility (Warden Harmon and Dr. Capps) under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and against the United States and two of its agencies (the DOJ and the BOP) under the FTCA, Newton brings claims of deliberate indifference related to (1) a one-day delay in medical treatment for a broken arm, which, according to Newton, resulted in a permanent injury and (2) Dr. Capps's alleged failure to provide him adequate pain medication.

As alleged in the amended complaint [Dkt. No. 9], Newton, while participating in a basketball game at FCI Seagoville on May 19, 2011, fell and broke the humerus bone in his left arm. *See id.* at 12. He was transported, within 45 minutes of the injury, to Kaufman Medical Center. *See id.* Medical providers there described Newton's injury as a "clean break" and as a "displaced fracture that likely included some lateral translation of the distal fragment" and advised Newton that he should be seen by a orthopedic specialist within 4 days. *Id.*

According to Newton, the next day, he was prescribed Percoset by Dr. Capps. *See id.* Newton alleges that, although he was in "excruciating pain" and "demanded some [other] form of pain management or medication," he received "nothing stronger than Percoset" three times daily. *Id.* at 13; *see also id.* ("Plaintiff suffered with severe pain for months without ever being given any supplement stronger than ibuprofen, and without ever receiving a dose in between twelve hour intervals throughout the night until 7:00 a.m.").

-3-

On May 24, 2011, Newton was seen by an orthopedic specialist at Texas Health Presbyterian who "determined that severe damage to the bone had already transpired and that the bone's improper and premature healing due to the duration of time between injury and treatment would require surgery as scheduled for June 1, 2011," a surgery that would require "titanium plates, screws, and other hardware necessary to straighten the partially reformed bone." *Id.*

Surgery was performed on that date. *See id.* at 15. But, according to Newton, he suffers ongoing pain and a "crooked arm" and needs further surgery and physical therapy. *Id.*

On May 16, 2013, within two years of suffering the injury while playing basketball, the BOP received Newton's administrative tort claim alleging that FCI "Seagoville medical staff exhibited a deliberate disregard for [his] medical needs by 1) failing to follow the one to four day order from Kaufman, as [he] was finally seen on the sixth day at which time surgery was now required and 2) failing to provide proper medications for pain." Dkt. No. 17-1 at 13-16.

That claim was denied through a letter sent to Newton on January 2, 2014. *See id.* at 19-23. And Newton was "advised that if [he] was dissatisfied with [the BOP's] determination in this matter, [he is] afforded six months from the date of the mailing of [the denial] within which to bring suit in the appropriate United States District Court." *Id.* at 19.

This action was filed no sooner than May 22, 2017, the date that Newton signed his initial complaint, which the Court docketed on May 30, 2017. *See* Dkt. No. 3.

-4-

## Legal Standards and Analysis

I.   <u>Failure to Exhaust (Warden Harmon and Dr. Capps)</u>

Under the PLRA, "'[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Davis v. Fernandez*, 798 F.3d 290, 294 (5th Cir. 2015) (quoting 42 U.S.C. § 1997e(a)). "This requirement applies to *Bivens* actions." *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). And courts interpret the term "with respect to prison conditions" broadly: "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

But "exhaustion under the PLRA is not a pleading requirement that plaintiffs must satisfy at the outset of litigation." *Dillon v. Rogers*, 596 F.3d 260, 272, 272 n.3 (5th Cir. 2010) (citing *Jones v. Bock*, 549 U.S. 199, 211-12 (2007); *Johnson v. Johnson*, 385 F.3d 503, 516 n.7 (5th Cir. 2004)). And a court "can only dismiss for failure to state a claim based on a failure to exhaust when the face of the complaint makes clear that the plaintiff did not exhaust." *LaBeouf v. Manning*, 575 F. App'x 374, 378-79 (5th Cir. 2014) (citing *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007); footnote omitted). Therefore, in almost every instance, "exhaustion under the PLRA is properly treated as an affirmative defense and analyzed as a motion for summary judgment," *Miller v. Fed. Bureau of Prisons*, 703 F. Supp. 2d 8, 15 (D.D.C. 2010) (citing *Jones*, 549 U.S. at

216); *accord LaBeouf*, 575 F. App'x at 379; *Burns v. East Baton Rouge Parish Prison Emergency Med. Servs.*, Civ. A. No. 14-0245-JWD-EWD, 2016 WL 1122242, at *2 (M.D. La. Mar. 4, 2016).

"[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to properly exhaust." *Jones*, 549 U.S. at 218 (internal quotation marks and citations omitted); *see Moussazadeh v. Tex. Dep't of Crim. Justice*, 703 F.3d 781, 788 (5th Cir. 2012) ("In determining exhaustion under the PLRA, we look to the processes established by the prison and the parties' use of these processes."); *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) (per curiam) ("Exhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them." (citations omitted)); *Kidd v. Livingston*, 463 F. App'x 311, 313 (5th Cir. 2012) (per curiam) ("It is the prison's requirements, not the [PLRA], that define the requirements of exhaustion"); *see also Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001) ("Nothing in the [PLRA] prescribes appropriate grievance procedures or enables judges, by creative interpretation of the exhaustion doctrine, to prescribe or oversee prison grievance systems" (footnote omitted)).

"[M]ere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, [the Fifth Circuit has] required prisoners to exhaust available remedies properly." *Dillon*, 596 F.3d at 268.

Thus, "[i]nmates need not exhaust all administrative remedies" – "only those that are 'available' to them," and, "[w]henever defendants claim a failure to exhaust, they have the burden to prove that the plaintiff did not exhaust administrative remedies that were actually available to him." *Davis*, 798 F.3d at 294-95 (citations omitted); *see Cowart v. Ervin*, 837 F.3d 444, 451 (5th Cir. 2016) ("The PLRA requires prisoners to exhaust such administrative remedies as are available prior to filing a § 1983 action regarding prison conditions." (citations and internal quotation marks omitted)); *see also Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016) ("[I]nterference with an inmate's pursuit of relief" – such as, "through machination, misrepresentation, or intimidation" – "renders the administrative process unavailable." (collecting cases, including *Davis*, 798 F.3d at 295 ("Grievance procedures are unavailable ... if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process" (emphasis deleted in *Ross*)))).

Warden Harmon and Dr. Capps, as defendants "asserting an affirmative defense , [ ] must establish beyond peradventure *all* of the essential elements of the ... defense to warrant judgment in [their] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Under this standard, which imposes a "heavy" burden, *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007), they must demonstrate that there are no genuine and material factual disputes and that they are entitled to summary judgment as a matter of law, *see, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). And the Court

must "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

> The BOP offers a four-step grievance procedure: (1) informal resolution of the issue with prison staff, submitted on form BP-8; (2) a formal administrative remedy request to the Warden, submitted on form BP-9; (3) an appeal to the Regional Director, submitted on form BP-10; and (4) a national appeal to the Office of General Counsel in Washington, D.C., submitted on form BP-11.

*Butts*, 877 F.3d at 582 (citing 28 C.F.R. §§ 542.13-15).

And Warden Harmon and Dr. Capps have submitted summary-judgment evidence establishing that "Newton has not exhausted his administrative remedies regarding the *Bivens* claims he asserts in this lawsuit." Dkt. No. 17-1 at 3, ¶ 8 (Sonya Cole Decl.). Newton, has responded by arguing, without offering evidence in support, that exhaustion is futile and/or not appropriate. *See* Dkt. No. 20 at 3-4; Dkt. No. 25 at 3; *see also, e.g., Smith v. Palafox*, ___ F. App'x ____, No. 17-50152, 2018 WL 1414552, at *3 (5th Cir. Mar. 21, 2018) (per curiam) ("To decide whether summary judgment is proper here, [a court] must, as a threshold matter, determine what evidence in the record is to be considered.' '[A]s a general matter, the competent evidence of the summary judgment nonmovant is to be accepted and credited.' But if 'the testimony that [the nonmovant] initially offer[s] in opposition to summary judgment [is] neither sworn nor declared under penalty of perjury to be true and correct, it [is] not competent evidence.'" (quoting *Davis*, 798 F.3d at 292; citation omitted)); *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 246 (5th Cir. 2017) (per curiam) ("[T]he the traditional leniency afforded to a pro se plaintiff does not excuse [him] from [his]

burden of opposing summary judgment through the use of competent summary judgment evidence." (citing *Davis*, 798 F.3d at 293 ("[T]his is not to say that pro se plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do."))); Dkt. No. 22 at 5-6 (Rule 12(d) order advising Newton that, "as the nonmoving party, [he] 'must set forth' – and submit evidence of – 'specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings'" (citations omitted)).

Even if the evidence that Newton has offered could be considered competent and also could support his assertion that exhaustion was futile based on when he discovered his injury, *see, e.g.,* Dkt. No. 20 at 3 ("The treatment was already complete and the damage already inflicted, all without Newton fully comprehending the gravity of such neglect or deliberate indifference. Only after learning that alternative pain options existed (time-released medications) and withheld from him, and only after realizing that his arm was showing deformity, and finally, only after being advised by medical professionals that he would require surgery to rectify past mistakes due to the delay, did he acquire sufficient grounds from which to file an Administrative Remedy, all as moot."), that assertion does not free him of his obligation to exhaust administrative remedies.

While "the exhaustion requirement 'may be subject to certain defenses such as waiver, estoppel, or equitable tolling,'" *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003) (quoting *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998)), *overruled by implication on other grounds by Jones*, 549 U.S. at 216, "[a]n administrative remedy

does not become unavailable simply because a prisoner has not timely or properly filed a grievance and is consequently later barred from seeking further administrative relief," *Dillon*, 596 F.3d at 267 n.1 (citing *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006)).

And, here, Newton does not argue – much less offer evidence that shows – that his injuries, once discovered, prevented him from exhausting administrative remedies. *See Huff v. Neal*, 555 F. App'x 289, 296 (5th Cir. 2014) (per curiam) ("Huff also argues that administrative remedies were rendered unavailable because his injuries prevented him from filing a timely request. We have held that an inmate's 'personal inability' may render a grievance system 'unavailable' for purposes of the exhaustion requirement. Although Huff alleges ... that he sustained injuries as a result of the [ ] attack, his summary judgment evidence went only to the nature of his injuries and did not demonstrate that his injuries prevented him from properly exhausting administrative remedies. These conclusory allegations cannot satisfy Huff's summary judgment burden." (quoting *Days*, 322 F.3d at 867)).

In sum, after drawing all reasonable inference in favor of Newton, Warden Harmon and Dr. Capps have carried their burden to establish beyond peradventure that the claims against them should be dismissed based on their affirmative defense that Newton failed to exhaust available administrative remedies. As a consequence, Newton's *Bivens* claims against Warden Harmon and Dr. Capps should be dismissed without prejudice, and the Court need not take up their argument that those claims should be dismissed for failure to state a claim. *See Dillon*, 596 F.3d at 272, 273 ("[E]xhaustion [under the PLRA] is a threshold issue that courts must address to

determine whether litigation is being conducted in the right forum at the right time" before proceeding to the merits.). Nor need the Court take up their qualified immunity defense, which, under the undersigned's general practice would require that these defendants file a separate motion for summary judgment and, before taking that motion under submission, also require that Newton be given an opportunity to move for leave to conduct limited discovery that is narrowly tailored to uncover facts that the Court needs to rule on that defense.

II.    <u>Time-barred (the United States and its agencies)</u>

Under the FTCA, federal courts have "exclusive jurisdiction of civil actions on claims against the United States for money damages for personal injury caused by the negligent or wrongful acts or omissions of any federal employee while acting within the scope of his office or employment." *Esquivel-Solis v. United States*, 472 F. App'x 338, 340 (5th Cir. 2012) (per curiam) (citing 28 U.S.C. § 1346(b)(1)); *see also id.* at 340 (noting that an FTCA action "may be brought against only the United States, and not the agencies or employees of the United States" (citing 28 U.S.C. §§ 2671, 2679; *Galvin v. OSHA*, 860 F.2d 181, 183 (5th Cir. 1988))).

And, "[s]ince a suit under the FTCA constitutes a waiver of sovereign immunity, the provisions that allow suit must be strictly construed." *Gibbs v. Miner*, No. 3:10-cv-228-M, 2010 WL 1711703, at *1 (N.D. Tex. Apr. 2, 2010) (citing *Gregory v. Mitchell*, 634 F.2d 199, 203-04 (5th Cir. 1981)), *rec. adopted*, 2010 WL 1730786 (N.D. Tex. Apr. 27, 2010).

As applicable here, under the FTCA's statute of limitations, "a tort claim against

the United States 'shall be forever barred' unless it is presented to the 'appropriate Federal agency within two years after such claim accrues' and then brought to federal court 'within six months' after the agency acts on the claim." *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1629 (2015) (quoting 28 U.S.C. § 2401(b)).

But, because this requirement is "non-jurisdictional and subject to equitable tolling," *id.* at 1638, a court must treat motions to dismiss FTCA claims as time-barred "under Rule 12(b)(6) rather than 12(b)(1)," as "the FTCA's statute of limitations is an affirmative defense for which the Government has the burden of proof," *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 486 (5th Cir. 2016) (citing *Sec. Indus. Ins. Co. v. United States*, 702 F.2d 1234, 1251 (5th Cir. 1983); citation omitted).

And, in order to consider this defense under a Rule 12(b)(6) motion, "the defense must appear on the face of the complaint." *Lamberth v. United States*, No. 16-2709, 2017 WL 747871, at *6 (D. Kan. Sept. 27, 2017) (citing *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) ("A motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses. In the limited circumstances where the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint.")); *cf. Wilson v. U.S. Penitentiary Leavenworth*, 450 F. App'x 397, 399 (5th Cir. 2011) (per curiam) (*pro se* FTCA and *Bivens* claims) ("'[W]here it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations, those claims are properly dismissed' as frivolous pursuant to § 1915(e)."

(quoting *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993))).

Because, here, the defense under Section 2401(b) is not established on the face of Newton's complaint – but by evidence submitted in the appendix filed with the motion to dismiss – the Court notified Newton that it would consider the limitations issue under Rule 56. *See* Dkt. No. 22.

The United States does not contest the first timeliness requirement – presentment to a federal agency within two years of accrual. *See* Dkt. No. 17-1 at 14-16 (administrative tort claim dated May 13, 2013). But, even if Newton's tort claim dated May 13, 2013 was "presented to the 'appropriate Federal agency within two years after such claim accrue[d],'" *Wong*, 135 S. Ct. at 1629, the summary judgment evidence further reflects that the claim was denied through a letter dated January 2, 2014, *see* Dkt. No. 17-1 at 18-20 (advising Newton that if he is "dissatisfied with [the] determination in this matter, [he is] afforded six months from the date of the mailing of this communication within which to bring suit in the appropriate United States District Court"); *see also Wong*, 135 S. Ct. at 1629 (an FCTA claim must "then brought to federal court 'within six months' after the agency acts on the claim"). And Newton did not file this action until more than three years later.

Afforded an opportunity to explain what, if anything, prevented him from timely filing this suit, Newton does not argue – much less offer evidence that supports – that the limitations period should be equitably tolled, *see id.* at 1638, by showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing," *Menominee Indian Tribe*

*of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)); *see Stamper v. Duval Cty. Sch. Bd.*, 863 F.3d 1336, 1342 (11th Cir. 2017) ("Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond [his] control and unavoidable even with diligence." (citation omitted)); *see also Peterson v. United States*, No. 8:18-cv-217-T-17TGW, 2018 WL 1832417, at *2 (M.D. Fla. Feb. 16, 2018) ("The FTCA's limitation period, however, is subject to equitable tolling. The plaintiff does not even mention that it applies. In light of the length of time between the death and the filing of this lawsuit, a claim of equitable tolling would seemingly be implausible and thus frivolous." (citation omitted)), *rec. adopted*, 2018 WL 1832419 (M.D. Fla. Mar. 14, 2018).

Thus, after drawing all reasonable inference in favor of Newton, the United States has carried its burden to establish beyond peradventure that the FTCA claims are time-barred and should be dismissed with prejudice.

## Recommendation

The motion to dismiss filed by Defendants United States of America, the Department of Justice, the Bureau of Prisons, D.J. Harmon, and Dr. Capps [Dkt. No. 15], converted to one for summary judgment should be granted, and the Court should dismiss the claims against Defendants Harmon and Capps without prejudice, but dismiss the claims against the United States (and its agencies) with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within

14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 13, 2018

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE